FILED

2007 Mar-30  PM 01:42
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **JERRY BROGDON; GLADYS B.** ) | |
| **HUNT; and GENE BAHR,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. CV-05-S-872-M** |
| ) | |
| **TOWN OF STEELE, a municipal** ) | |
| **corporation; WABASH ALLOYS,** ) | |
| **L.L.C., a foreign Limited Liability** ) | |
| **Company,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

This action — in which plaintiffs contend that defendants conspired to take,

and ultimately took, plaintiffs' property without just compensation or due process of

law in violation of 42 U.S.C. §§ 1983 and 1985, and the Fifth and Fourteenth

Amendments[1] — is before the court on cross motions for summary judgment filed by

plaintiffs (doc. no. 26) and both defendants, Wabash Alloys, L.L.C. (doc. no. 28), and

the Town of Steele, Alabama (doc. no. 30).

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment

---

[1] *See* doc. no. 1 (Complaint) and doc. no. 13 (Amended Complaint). The "taking" clause of the Fifth Amendment has long been held applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 122 (1978) (observing that, "of course," the taking clause "is made applicable to the States through the Fourteenth Amendment") (citing *Chicago, B. & Q. R. Co. v. Chicago*, 166 U.S. 226, 239 (1897)).

not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

When, as here, a court is presented cross motions for summary judgment, "[t]he

court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 2720, at 335-36 (1998) (footnote omitted); *see also, e.g., Arnold v. United States Postal Service*, 649 F. Supp. 676, 678 (D. D.C. 1986).

When ruling upon summary judgment motions, the court is required to "relate all material facts in genuine dispute in the light most favorable to the party resisting summary judgment." *Serrano-Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 24 (1st Cir. 1997) (citing *Sanchez v. Alvarado*, 101 F.3d 223, 225 n.1 (1st Cir. 1996)). That duty is more onerous in the present case than normally would be true, however, because the facts are convoluted at best, and this court has not been aided in discerning essential points by the briefs of counsel. Nevertheless, when responding to each defendant's motion for summary judgment, plaintiffs failed to dispute defendants' statements of the allegedly relevant facts. Therefore, and in accordance with this court's Initial Order, defendants' statements of facts, such as they are, will be deemed admitted.[2] Thankfully, as will be seen, the legal issues do not match the

---

[2] This court entered an Initial Order providing, with respect to summary judgment motions, that:

> Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless*

complexity of the underlying facts.

## I. SUMMARY OF ESSENTIAL FACTS

All plaintiffs and defendant Wabash Alloys, L.L.C. ("Wabash") own real property that abuts "Brogdon Road," a private way lying within the corporate limits of the Town of Steele, in St. Clair County, Alabama ("the Town"). That roadway intersects, at its northern terminus, a public thoroughfare known as "Steele Station Road."

Brogdon Road was not constructed as a public thoroughfare, but was originally laid-down as a private way on some unknown date prior to 1900, at the expense of plaintiff Jerry Brogdon's great-grandmother, a lady identified only as "Mrs. Eubanks."[3] Sometime following the end of World War I, Jerry Brogdon's father allegedly "opened it [Brogdon Road] up for an easement," to provide persons owning property farther south along Brogdon Road access to Steele Station Road.[4] Even if that be so, no written description of an easement running with the land was included in any deed or other document filed in the Probate Records of St. Clair County,

---

*controverted by the response of the party opposing summary judgment.*

Doc. no. 10 (Initial Order), at 17-18 (emphasis in original).

[3] Dft. Wabash Ex. 5 (Brogdon Deposition), at 43.

[4] *Id.* at 44-48. At present, those persons consist of all plaintiffs and Jerry Brogdon's sister-in-law and nephews.

Alabama.[5]

Plaintiff Jerry Brogdon resides in Valparaiso, Florida, and he has done so since at least 1956.[6]  He has not resided on Brogdon Road since shortly after World War II.[7]  He inherited approximately four acres of land on Brogdon Road from his father, Walter C. Brogdon.[8]  His acreage, like that of Wabash Alloys, straddles Brogdon Road. [9]  Mr. Brogdon has not been on his land since December 19, 2003.[10]  Prior to that date, he visited about once each year, and spent a few hours walking the land. No improvements have been constructed on the property.[11]

Plaintiff Gladys Hunt is the sister of Jerry Brogdon, and she also inherited a tract of land along Brogdon Road when their father, Walter C. Brogdon, passed away.[12]  She has resided in Claysville, Pennsylvania for over fifty years.[13]  Like her brother, Ms. Hunt visits her unimproved real estate on Brogdon Road approximately

---

[5] Dft. Wabash Ex. 2 (Waldrup Affidavit) ¶¶ 6-10.

[6] Dft. Wabash Ex. 5 (Brogdon Deposition), at 7.

[7] *Id*. at 16-17.

[8] *Id*. at 25-26, and 40-41.  A copy of the deed recorded in Deed Book 133, at Page 541, Probate Records of St. Clair County, is attached as (unnumbered) pages 1-3 of Exhibit "B" (doc. no. 27) to Plaintiffs' Motion for Summary Judgment (doc. no. 26).

[9] Dft. Wabash Ex. 5 (Brogdon Deposition), at 42.

[10] *Id*. at 19.

[11] *Id*. at 20-22.

[12] Dft. Wabash Ex. 6 (Hunt Deposition), at 15.  A copy of the deed recorded in Deed Book 133, 1t Page 544, Probate Records of St. Clair County, is attached as (unnumbered) pages 4-6 of Exhibit "B" (doc. no. 27) to Plaintiffs' Motion for Summary Judgment (doc. no. 26).

[13] Dft. Wabash Ex. 6 (Hunt Deposition), at 5.

once each year.[14]

Plaintiff Gene Bahr inherited approximately four acres of unimproved real estate on Brogdon Road from the estate of his mother, Julia Brogdon Ledbetter, on December 16, 2004.[15]  Mr. Bahr moved from Alabama in 1968, and has resided in Sebago, Maine for more than twenty-four years.[16]  Even so, he has visited Alabama once each year for the past twenty-five years, and always spent "just a few minutes" on the property, to "look it over, see if anybody had dumped trash on it or . . . cut trees on it."[17]

Most of the land presently owned by defendant Wabash that lies — literally and figuratively — at the center of the present dispute was originally purchased in the time-frame of 1958–'60 by a predecessor in title, "Alpine Mills" (which operated a "gray iron foundry" on the property), then sold to "Culp Aluminum Alloys" (which owned the foundry and real property from 1970 to 1989), then sold to "Leggett-Platt, Incorporated" (which owned the property from 1989 to 2002), and finally sold to

---

[14] *Id*. at 31.

[15] Dft. Wabash Ex. 7 (Bahr Deposition), at 9, 14.  A copy of the Dec. 16, 2004 "Personal Representative's Deed" recorded in an undisclosed Deed Book and Page of the Probate Records of St. Clair County, Alabama, is attached as Exhibit "F" (doc. no. 27) to Plaintiffs' Motion for Summary Judgment (doc. no. 26).  It should be noted that, based on the date of this deed, Mr. Bahr did not own property on Brogdon Road when the Steele Town Council passed the ordinance concerning the vacation of a portion of Brogdon Road that is discussed hereafter.  *See* Dft. Wabash Ex. 7 (Bahr Deposition), at 50.

[16] *Id*. at 8, 10.

[17] *Id*. at 16-17.

Wabash.[18]

Wabash is engaged in the business of "recycling scrap aluminum" by melting it "back into a specification alloy" that can then be re-used by other manufacturers to cast new products, such as automotive engine blocks.[19]   The company employs approximately 83 persons.[20]   The land upon which Wabash's recycling and smelting facilities are situated — like that of plaintiff Jerry Brogdon, which is immediately contiguous to the Wabash property — straddles Brogdon Road, and lies at the intersection of that road with Steele Station Road on the north.[21]

At all times relevant to the issues in this suit, Robert H. Pine was Manager of the Wabash plant located in Steele, Alabama.[22]   In that capacity, he delivered a letter to the Mayor and members of the Steele Town Council on or about September 27, 2002, asking the Town to approve his company's desire to vacate that portion of Brogdon Road traversing the Wabash plant site.[23]   The text of his letter read as

---

[18] *See* Dft. Wabash Ex. 8 (Pine Deposition), at 5-9.  A copy of the warranty deed from Leggett & Platt, Inc. to Wabash Alloys L.L.C. that was recorded in Deed Book 2002, at Page 7347, of the Probate Records of St. Clair County is attached as Exhibit "G" (doc. no. 27) to Plaintiffs' Motion for Summary Judgment (doc. no. 26).

[19] Dft. Wabash Ex. 8 (Pine Deposition), at 7.

[20] *Id*. at 10.

[21] Dft. Wabash Ex. 2 (Waldrup Affidavit) ¶ 2.

[22] Dft. Wabash Ex. 1 (Pine Affidavit) ¶ 1.

[23] *Id*. ¶ 3.  The legal description of that portion of Brogdon Road traversing Wabash's property is attached to Dft. Wabash Ex. 2 (Waldrup Affidavit) as Exhibit "A," and the deeds transferring title to Wabash of its property straddling Brogdon Road are attached as Exhibits "B" and "C," to the same affidavit.

follows:

Dear Mayor Lackey and Council Members:

Let me begin by saying that I have worked in Steele for the better part of 33 years beginning with the old Alpine Mills facility and continuing today with Wabash Alloys the new owner of the former Culp Aluminum Alloys business.  Steele has been a significant part of my life and I have many friends here.

In all of the years that I have worked in Steele and especially the years at the Aluminum Plant, I see more opportunities today with Wabash Alloys that I have ever seen before.  Wabash Alloys has a strategic interest in the automotive expansion that has taken place in Alabama over the last 10-years.   Wabash is a major supplier of aluminum raw material alloys for various automobile components the largest of these being auto engines.

Significant expansion has been planned and is now underway at our plant in Steele.  There will be an increase in employment at our facility that will surpass any past numbers of workers in our plant's history.  All of this growth and increased activity will put a strain on the traffic in and around our plant.  *Due to the fact that our facility is divided in two by Brogdon Road*, *much of our new operations will be hampered by having to deal with the local traffic moving through the middle of our activities*.

*It would be of great help to our present and future growth of business for Brogdon Road to be closed to public traffic on the part that borders our property and meets Steele Station Road.  This*, *of course will prevent the residents at the end of the road from entering and leaving their neighborhood in the regular way.  It has been known to us for many years*, *however, that there is an alternate way for those residents to come and go by an old road bed that extends from their neighborhood to Highway 11.*

*We therefore propose to work with you on a plan to close the*

8

*portion of Brogdon Road described above, which will provide adequate access for the residents to their homes. We recognize that this road closing will also impact the entrance into the town's ball field that adjoins our property on the Southwest.*

A good bit of the growth in activity at our plant will be underway before the end of this year. Our plans for the plant here in Steele will benefit our community and the State. We look forward to discussing the closing of our end of Brogdon Road with you at your earliest convenience.

> Very Truly Yours,
> /s/ Bob Pine
> Plant Manager[24]

According to Robert Pine's affidavit, his intent in mailing this letter was to take "a step to comply with § 23-4-20 of the Alabama Code."[25] That statutory provision reads as follows:

(a) Subject to the conditions set out in this subsection, any street or alley may be vacated, *in whole or in part*, by the owner or owners of the land abutting the street or alley *or abutting that portion of the street or alley desired to be vacated* by following the procedures set out herein. The owner or owners of the land abutting the street or alley to be vacated shall join in a written petition requesting that the street or alley be vacated and shall file the petition with the governing body with jurisdiction over the street or alley, *or portion thereof*, requesting the governing body's approval of the vacation. Following receipt of the

---

[24] "Plaintiffs' Exhibit 1" to the Deposition of Patricia Coffee (Exhibit "I" to Plaintiffs' Motion for Summary Judgment (doc. no. 26)) (emphasis supplied). For reasons that are inexplicable to this court, this letter has often been (and incorrectly) referred to by counsel for the parties as "the *Declaration of Vacation* of Brogdon Road." It was no such thing; it was a "petition" to vacate a "portion" of the road. As will be seen hereafter, the formal "Declaration of Vacation" was another document altogether.

[25] Dft. Wabash Ex. 1 (Pine Affidavit) ¶ 4.

written request for assent, the governing body shall act upon the request applying the same notice, hearing, voting, and appeal procedures as set forth in Sections 23-4-2 and 23-4-5, and if the governing body approves the vacation, it shall have the same effect as provided therein, *including that the vacation shall not deprive other property owners of any right they may have to convenient and reasonable means of ingress and egress to and from their property, and if that right is not afforded by the remaining streets and alleys, another street or alley affording that right must be dedicated.*

(b) The provisions of this section shall not be held to repeal any existing statute relating to the vacation of roads, streets, or alleys, or parts thereof, and shall not be held to limit or expand any civil causes of action available under the law.

Ala. Code § 23-4-20 (1975) (emphasis supplied).

Even though Robert Pine was reasonably sure that he and the mayor subsequently engaged in conversations concerning the need to provide an alternate means of ingress and egress for those persons owning homes or property south of the Wabash plant site,[26] the Town took no immediate action on the petition.[27]  Indeed, the first official acknowledgment of the petition is found in the August 4, 2003 Town Council Minutes, which clearly reflect the substance of intervening negotiations between the Town Mayor and Robert Pine:

Letter was received from Wabash Alloys regarding **closing of Brogdon Road** and making a new access out.  They will pay $28,000 through the town to property owners where a new access road will have

---

[26] Dft. Wabash Ex. 8 (Pine Deposition), at 22-23.

[27] *See*, *e.g.*, *id*. at 21 (where Pine remarked that, "[a] lot of dead time" passed before the Town acted on the petition).

to be built.  Herbert Battles is asking $7,000 for his property, Jeffrey Battles wants $6,000 and Jennifer Battles $15,000 to cross the corner of her property.  Will ask county for help on making another road which will come out on Barron Street and if they will not then will go back to Wabash.  The mayor has talked with Robbie Harris and he will let the town use his driveway for access into the ballfield if the town will keep the road up.  Motion made by Wilcox to accept proposal from Wabash regarding Brogdon Road at expense of Wabash Alloys & help from other sources, 2nd by Clay and approved by council (copy attached).

> Ayes:     Wilcox, Clay, Smith, Morrow & Washburn
> Nays:     None.[28]

Following this action of the Town Council, the Mayor mailed a letter to Robert

Pine on September 5, 2003, reading as follows:

[1] *The Town of Steele* has secured verbal commitments from three landowners in Steele to sell property to the Town.  These purchases by the Town would provide contiguous right-of-ways to connect a new road from the portion of Brogdon Road South of the *Wabash Alloys* plant to Barron Street, by which US Highway #11 can be accessed.  The acquisition of this land and the construction of a new road out for the local residents will allow the town to close a portion of Brogdon Road.  This would be the portion that passes through the *Wabash Alloys* property beginning at Steele Station Road and ending as the southern most point of Wabash's property along Brogdon Road, which is marked by the stream culvert under the road.  The total selling price of the three contiguous right-of-ways verbally committed to the Town by these three landowners is $28,000.

[2] In order for *The Town of Steele* to close the above described portion of Brogdon Road, the Town requests that *Wabash Alloys, LLC,* provide the funds ($28,000) to *The Town of Steele* for the purchase of

---

[28] The Town Council Minutes for August 4, 2003 were identified as "Plaintiffs' Exhibit 2" to the Deposition of Patricia Coffee: *see* Exhibit "I" (doc. no. 27) to Plaintiffs' Motion for Summary Judgment (doc. no. 26).

said right-of-ways.  Once the construction of the new road is completed, the Town will close part of Brogdon Road as described, which will become Wabash Alloys' property with one condition.  The condition being that the residents at #250 Steele Station Road (corner of Steel Station and Brogdon Roads) be allowed access to their residence via the present driveway, which borders Brogdon Road.  For the project to be completed in a timely manner, it is important that these rights-of-way be purchased and new road construction begun as soon as possible to avoid fall/winter wet weather, which could delay the project until late spring or early summer of 2004.

[3] *The Town of Steele* plans to secure assistance from *St. Clair County, AL*, and other sources as necessary in preparation for and construction of the proposed new road out for residents of the Southern portion of Brogdon Road.  While it is hoped that much of the cost of completing the new road can be covered through this assistance, the Town asks that *Wabash Alloys* pick up the balance of any unmet costs of construction.  The new asphalt road out will be two lanes and approximately 1100 feet long.  A local road contractor has estimated the total cost of such a length of road to be in the range of $20,000 to $25,000.

[4] In working with Wabash Alloys on this project, *The Town of Steele* agrees to move the present entrance into the Town's "Ball-field".  Said ball-field entrance is on Town property at the West side of Brogdon Road and adjacent to the Southernmost portion of Wabash property on the same side of the road.  The entrance will be relocated to a location that can be accessed using the proposed new road and will not interfere with Wabash operations, nor endanger those citizens accessing the ball-field.  If this works out, the Town will have some expense to place a short entrance road (approximately 50 feet) from said right-of-way into the ball-field area.  We ask Wabash to contribute the funds for this relocation entrance road cost when determined.  The cost is expected to be no more than $500.

[5] As soon as *The Town of Steele* is in receipt of $28,000 from *Wabash Alloys*, the Town will proceed with the purchase of the right-of-

ways followed by the construction of the new road.  The Town will keep Wabash updated on the cost of the road construction and an accounting of otherwise covered costs versus any residual amount owed by Wabash.

[6] *The Town of Steele* is committed to helping our local businesses grow and succeed.  We are happy to have a business like Wabash Alloys here in Steele.  Please let me know, if there is anything that I can do for your company.

> Sincerely,
> /s/ Alfred Lackey
> Mayor[29]

Shortly after receipt of this letter, additional negotiations obviously ensured between Pine and the Mayor because, on August 8, 2003, the Mayor addressed a second letter to Pine.  This letter was identical to the first in all respects, save one: the following text was inserted, as a new paragraph, between the paragraphs numbered by this court as [4] and [5] above:

[4(a)] Notwithstanding anything contained herein, Wabash's maximum commitment and obligation to cover the cost of the new road right-of-way purchases, improvements and relocation shall not exceed $50,000.00.  The Town of Steele shall have an unequivocal obligation to complete the road work described herein no later than June 1, 2004 regardless of the final cost as long as Wabash has fulfilled its obligation to fund up to $50,000.00 for such work.[30]

Beginning on October 2, 2003, the Mayor caused notices of the Town

---

[29] "Plaintiffs' Exhibit 19" to the Deposition of Robert Pine (Dft. Wabash Exhibit 8 (italicized emphasis in original, boldface bracketed alterations added)).

[30] Two copies of this Aug. 8, 2003 letter containing this textual addition were identified as Plaintiffs' Exhibits 20 and 25 to the Deposition of Robert Pine (Dft. Wabash Exhibit 8 (boldface bracketed alteration added)).

Council's intention to hold a public hearing on October 20, 2003, on the issue of vacating a portion of Brogdon Road to be published in *The Daily Home*, a newspaper of general circulation in St. Clair County.[31]  The notice was published on three days: *i.e.*, October 2, 11, and 16, 2003.[32]

The Minutes for the Town Council meeting held on October 20, 2003 reflect that "no one from the public attended this meeting" in response to the published notice concerning the Brogdon Road Declaration of Vacation.[33]

The Town Counsel formally approved Wabash's petition to vacate that portion of Brogdon Road traversing its property on November 3, 2003.[34]  The pertinent portions of the Ordinance adopted on that date (No. 2003-009) read as follows:

DECLARATION OF VACATION OF BROGDON ROAD

WHEREAS, a declaration signed by the owner of all the lands abutting the following described road, a portion of Brogdon Road, situated in the Town of Steele, County of St. Clair, State of Alabama,

---

[31] *See* "Plaintiffs' Exhibit 6" to the Deposition of Patricia Coffee, the Town Clerk:  Exhibit "I" to Plaintiffs' Motion for Summary Judgment.

[32] *Id*. at deposition pages 54-60.

[33] *Id*. ("Plaintiffs' Exhibit 6").

[34] *See* the Minutes of the Nov. 3, 2003 Town Council meeting attached as "Plaintiffs' Exhibit 7" to the Deposition of Patricia Coffee, and reading as follows:

> Discussion of adoption of a resolution regarding closing of a portion of Brogdon Road from Steele Station to the branch at the end of Wabash.  After discussion, motion made by Washburn to adopt a resolution for declaration of vacation of Brogdon Road as stated, 2nd Morrow & approved [unanimously].

Exhibit "I" (doc. no. 27) to Plaintiffs' Motion for Summary Judgment (doc. no. 26).

14

vacating the following described portion of said street, has been duly presented to the Town Council of the Town of Steele, Alabama, for the assent approval [sic] of said governing body, said declaration with map attached being hereto affixed, marked Exhibit A and made part hereof, and

WHEREAS, the street section above referred to is more particularly described as follows:

[*metes and bounds legal description omitted*], and

WHEREAS, it appears to the Town Council of the Town of Steele, Alabama, that the vacation of said street is in order and that convenient and reasonable means of ingress and egress is afforded to all property owners owning properties in the tract of land embraced in said map, and along the remainder of Brogdon Road.

NOW, THEREFORE, BE IT RESOLVED, by the Town Council of the Town of Steele, Alabama, that the vacation of the hereinabove described street section is assented to and approved and same is hereby vacated pursuant to the provisions of Section 23-4-20 of the Alabama Code of 1975.[35]

This Ordinance was not recorded in the Probate Records of St. Clair County, Alabama.[36]

---

[35] Dft. Wabash Ex. 2 (Waldrup Affidavit), Exhibit "E."

[36] Dft. Wabash Ex. 2 (Waldrup Affidavit) ¶ 11.  Wabash Plant Manager Robert H. Pine subsequently testified, without contradiction, that:

No employee or agent of Wabash drafted, or played any role in, the approval of the declaration of vacation contained in Ordinance No. 2003-009.  No member or agent of Wabash attended the City Council meeting in which the ordinance was approved.  No member or agent of Wabash signed the ordinance.

Dft. Wabash Ex. 1 (Pine Affidavit) ¶¶ 8, 9.  However, Pine did record the following document in Deed Book 2004, at Page 342, of the Probate Records of St. Clair County on January 16, 2004:

At some point in time that is not identified by the parties, but while the foregoing events were ongoing, Wabash hired a local contractor to erect a fence around its plant site, thereby blocking public access to that portion of Brogdon Road passing through its property.[37]  None of the lands owned by plaintiffs touched that portion of Brogdon Road closed to public traffic by the Wabash fence, although

---

DECLARATION OF VACATION OF BROGDON ROAD

WHEREAS, Wabash Alloys is the owner of all property abutting that portion of Brogdon Road as same appears on the map which is attached hereto and made part hereof, and

WHEREAS, Wabash Alloys is desirous of vacating said Brogdon Road, as same appears on said attached survey/legal description;

NOW, THEREOF, Wabash Alloys, owner of said property embraced within the boundaries of said Brogdon Road, as same appears on the survey of that portion to be vacated, and same is hereby vacated.

Wabash Alloys does hereby, pursuant to and in accordance with the provisions of Section 23-4-20 of the Alabama Code of 1975, join in the execution of this written declaration of vacation of said street and same being within the limits of the Town of Steele, a municipality, does hereby pray and request the assent of the municipal council of the Town of Steele, Alabama, to said vacation of a portion of said street and its approval of same.

Such vacation will not deprive the other property owners of a convenient and reasonable means of ingress and egress to their property.

IN WITNESS THEREOF, we, have hereto set our hands and seals on this the 23rd day of December, 2003.

Dft. Wabash Ex. 2 (Waldrup Affidavit) ¶ 4 and Exhibit "D."

[37] *See*, *e.g.*, Dft. Wabash Ex. 8 (Pine Deposition), at 25.  That portion of Brogdon Road traversing the Wabash property was blocked by a fence and concrete barriers at one end, and a fence gate at the other.  *Id*. at 46.

plaintiffs' properties did have road frontage on Brogdon Road, outside the fenced portion.[38]

Plaintiffs filed this action on April 27, 2005.  Before doing so, they did not seek relief in the state court system; and, to this date, they have not done so.[39]

Following commencement of this action, and after plaintiffs filed their responses to defendants' motions for summary judgment, Wabash removed the barricade and fencing that blocked public access to that portion of Brogdon Road traversing its property.[40]  "As a result, Brogdon Road once again is fully accessible for use by the public through the real estate owned by Wabash."[41]

## II. DISCUSSION

To begin with, it should be noted that — in the absence of evidence of some document having being recorded in the Probate Records of St. Clair County, Alabama, legally describing by metes and bounds the easement allegedly "opened up" by plaintiff Jerry Brogdon's father following the end of World War I,[42] *or* a right-of-

---

[38] *See* Dft. Wabash Ex. 7 (Bahr Deposition), at 66-67.  The only map clearly showing the portion of Brogdon Road that traverses the Wabash property is found at Dft. Wabash Ex. 5 (Brogdon Deposition), and marked "Defendant's Exhibit 1."  *See also* the last page of Exhibit "C" to Plaintiffs' Motion for Summary Judgment (Deposition of Gladys Hunt).

[39] *See* Dft. Wabash Ex. 3 (Affidavit of Jeff Wyatt, St. Clair County Circuit Clerk), at 2-5.

[40] *See* doc. no. 34 (Dft. Wabash's Supplemental Evidentiary Materials), Ex. 10 (Pine Affidavit) ¶¶ 2.

[41] *Id*.

[42] *See supra* note 4 and accompanying text.

17

way deed to the same effect, *or* a deed reserving the easement to the grantees, their heirs, and assigns (*i.e.*, an "easement running with the land"), *or* a recorded survey or subdivision plat depicting the contours and legal description of either the alleged easement or a roadway dedicated to the Town or County — plaintiffs appear to have no legally protectable property interest in that portion of Brogdon Road conveyed by deed to Wabash's predecessors in title and, ultimately, to defendant Wabash, *provided*, of course, plaintiffs and others like them are accorded a reasonable alternative means of ingress and egress to and from their respective properties.[43]  That is an issue of state law, however, and does not supply the rule for this court's decision.

Furthermore, in view of the fact that Wabash's fencing and barriers blocking access to that portion of Brogdon Road traversing its property have been removed,[44] and, in view of the fact that all plaintiffs reside outside the State of Alabama and (at worst) have been deprived of access to their respective lands for only transitory periods once each year, their damages, if any, would be *de minimis* — certainly not an amount sufficient to justify "making a federal case out of" their grievances.  Again, however, those considerations are not the basis for this court's decision.

Rather, the grounds for this court' decision are two.  First, plaintiffs have failed

---

[43] *See supra* note 18 and accompanying text.

[44] *See supra* notes 40 and 41 and accompanying text.

to demonstrate that the statutory vacation process has been concluded.  Specifically,
the notice published in *The Daily Home* newspaper on October 2, 11, and 16, 2003,[45]
did not comply with the requirements of Alabama Code § 23-4-2, which requires that
notice of a public hearing on the proposed vacation be published "once a week for
*four* consecutive weeks" — not just *three*.

>    (a) Whenever the governing body of a municipality or county
> proposes to vacate a public street, alley, or highway, *or portion thereof*,
> the governing body shall schedule a public hearing prior to taking final
> action *and shall publish notice of the proposed hearing on the vacation*
> in a newspaper of general circulation in the portion of the county where
> the street, alley, or highway lies *once a week for four consecutive weeks*
> *in the county prior to deciding the issue at a regularly scheduled*
> *meeting of the governing body*.  A copy of the notice shall be posted on
> a bulletin board at the county courthouse and shall also be served by
> U.S. mail at least 30 days prior to the scheduled meeting on any abutting
> owner and on any entity known to have facilities or equipment such as
> utility lines, both aerial or buried, within the public right-of-way of the
> street, alley, or highway to be vacated.  The notice shall describe the
> street, alley, highway, or portion thereof proposed to be vacated and also
> give the date, time, and location of the meeting of the governing body
> at which the proposed vacation is scheduled to be addressed.  Any
> citizen alleging to be affected by the proposed vacation may submit a
> written objection to the governing body or may request an opportunity
> to be heard at the public hearing held as required herein.

Ala. Code. § 23-4-2(a) (1975) (emphasis supplied).  Further, Ordinance No. 2003-009
did not comply with those portions of the same statute requiring that the "resolution"
(declaration) of vacation:  (*i*) "give the names of . . . the owner or owners of such

---

[45] *See supra* notes 31 and 32 and accompanying text.

other lots or parcels of land, if any, which will be cut off from access thereby over some other reasonable and convenient way"; (*ii*) "set forth that it is in the interest of the public that such street, alley, or highway, or portion thereof, be vacated"; and (*iii*) "be filed in the probate court of the county":

(b) If the governing body elects to vacate, it shall adopt a resolution which shall describe with accuracy the street, alley, or highway, or portion thereof, to be vacated *and shall give the names of the owner or owners of the abutting lots or parcels of land and also the owner or owners of such other lots or parcels of land*, *if any*, *which will be cut off from access thereby over some other reasonable and convenient way*. The resolution shall further set forth that *it is in the interest of the public that such street*, *alley*, *or highway*, *or portion thereof, be vacated and shall be filed in the probate court of the county*. In counties which elect the members of the county commission by single-member districts, the motion to approve the vacation shall be made by the commissioner in whose district the portion of the public street, alley, or highway to be vacated is located. The vacation shall not deprive other property owners of any right they may have to convenient and reasonable means of ingress and egress to and from their property, and if that right is not afforded by the remaining streets and alleys, another street or alley affording that right must be dedicated. The filing of the resolution as required herein shall operate as a declaration of the governing body's vacation and shall divest all public rights and liabilities, including any rights which may have been acquired by prescription, in that part of the public street, alley, or highway vacated. Title and all public rights, including the right to close the street, alley, or highway vacated, shall vest in the abutting landowners. Entities with utility lines, equipment, or facilities in place at the time of vacation, shall have the right to continue to maintain, extend, and enlarge their lines, equipment, and facilities to the same extent as if the vacation had not occurred. Notice of the governing body's action shall be published once in a newspaper in the county no later than 14 days after its adoption.

Ala. Code § 23-4-2(b) (emphasis supplied).  For all of these reasons, Ordinance No. 2003-009 did not effect either a legal vacation of that portion of Brogdon Road traversing Wabash's plant site, or a valid "taking" of plaintiffs' alleged property interests in that portion of the roadway.  Hence, their claims are not ripe for adjudication.  *See*, *e.g.*, *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186-94 (1985).

The second basis for the court's decision lies in the undisputed fact that plaintiffs totally failed to utilize the state's available procedures to challenge the alleged "taking" of their property before seeking recourse in this court.  The Supreme Court has clearly held that a property owner must exhaust state procedures for obtaining just compensation before commencing a "taking" claim under the Fifth and Fourteenth Amendments, *via* the remedial vehicle of 42 U.S.C. § 1983.

> A second reason the taking claim is not yet ripe is that respondent did not seek compensation through the procedures the State has provided for doing so.  The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.  Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking.  If the government has provided an adequate process for obtaining compensation, and if resort to that process yields just compensation, then the property owner has no claim against the [state] Government for a taking. . . . [I]f a State provides an adequate procedure for seeking just compensation, the

> property owner cannot claim a violation of the Just Compensation
> Clause until it has used the procedure and been denied just
> compensation.

*Williamson Co. Regional Planning Comm'n*, 473 U.S. at 194-95 (citations, footnote,

and internal quotation marks omitted).  *See also  Anthony v. Franklin County*, 799

F.2d 681, 684 (11th Cir. 1986) (same).

Alabama law provides multiple procedures for redressing plaintiffs' claims,[46]

including an inverse condemnation action,[47] but plaintiffs have failed to pursue any

state remedy.  Accordingly, their claims are premature.

Plaintiffs do not dispute the fact that they have not pursued any state remedy,

but rely upon *Henley v. Herring*, 779 F.2d 1553 (11th Cir. 1986), as support for the

---

[46] *See, e.g.*, Ala. Code § 23-4-5 (1975), providing that:

> Any party affected by the vacation of a street, alley, or highway pursuant to
> this chapter may appeal within 30 days of the decision of the governing body
> vacating the street to the circuit court of the county in which the lands are situated,
> and upon such appeal, the proceeding shall be tried de novo, either party having the
> right to demand trial by jury when and as demand is authorized in civil actions.  The
> appeal shall not suspend the effect of the decision of the governing body unless the
> appealing party shall give bond, with sureties, in an amount to be determined by the
> circuit judge.  From the judgment of the circuit court, an appeal may be taken within
> 42 days by either party to the Court of Civil Appeals or the Supreme Court in
> accordance with the Alabama Rules of Appellate Procedure.

*See also, e.g.*, *McPhillips v. Brodbeck*, 266 So. 2d 592 (Ala. 1972) (holding that where a county's
vacation and closure of a street deprived a property owner of his only convenient access to Mobile
Bay and Gulf of Mexico, and where no substitute access had been provided, the plaintiff was entitled
to have the vacation set aside and to injunctive relief).

[47] *See* Ala. Code § 18-1A-32 (1975).  *See also, e.g.*, *Alabama Dept. of Transportation v. Land
Energy, Ltd.*, 886 So. 2d 787, 792 (Ala. 2004); *Ex parte Carter*, 395 So. 2d 65, 67 (Ala. 1980).

22

argument that their claims are not premature, but "ripe" for adjudication.  In *Henley*, suit was brought under § 1983 for an injunction against the University of Alabama at Birmingham ("UAB"), when UAB took steps to vacate and close a portion of 19th Street pursuant to a master plan to develop its medical center complex.  The court found that plaintiffs' claims were ripe because, before the date of the district court's judgment, UAB made the  necessary filings in probate court to complete the statutory process, and the City formally approved the vacation of 19th Street.  *Id*. at 1555. Under the facts deemed admitted for purposes of summary judgment in this case, however, the statutory process has not been concluded.  The Town has not complied with the statutory procedures for vacation of a portion of Brogdon Road, and the attempted vacation is not complete.  Thus, *Henley* lends no precedential support to plaintiffs.

### III. CONCLUSION AND ORDERS

For all of the foregoing reasons, plaintiffs' motion for summary judgment is DENIED, and defendants' motions for summary judgment are GRANTED.  All claims are dismissed, without prejudice to plaintiffs' right to pursue appropriate state remedies, if they choose.  All costs incurred herein are taxed to plaintiffs.  The Clerk is directed to close this file.

DONE this 30th day of March, 2007.

_____
United States District Judge